

NUMBER 13-16-00659-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                            Appellant,

v.

MIGUEL MARTINEZ,                                                              Appellee.

**On appeal from the 332nd District Court
of Hidalgo County, Texas.**

# O P I N I O N

**Before Justices Rodriguez, Contreras, and Hinojosa
Opinion by Justice Contreras**

Appellee Miguel Martinez, the former police chief of Sullivan City, Texas, was indicted by a Hidalgo County grand jury on one count of theft (Count I) and two counts of abuse of official capacity (Counts II and III). *See* TEX. PENAL CODE ANN. §§ 31.03, 39.02 (West, Westlaw through 2017 1st C.S.). The trial court granted Martinez's motion to suppress certain evidence and his motion to quash all three counts of the indictment.

Appellant, the State of Texas, now appeals those rulings by two issues.

We determine that the trial court erred in granting the motion to quash, but that it should have directed the State to amend Counts II and III to provide greater specificity as to the offenses alleged therein. Further, we find that the State lacks statutory authority to appeal the granting of the motion to suppress because that ruling was never reduced to writing. Accordingly, we dismiss the appeal for want of jurisdiction in part, and we reverse and remand in part.

## I. BACKGROUND

Count I of the indictment alleged that, on or about May 21, 2015, Martinez intentionally and knowingly unlawfully appropriated more than four ounces but less than five pounds of marijuana, worth $500 or more but less than $1,500, from the Sullivan City Police Department. *See id.* § 31.03(a), (e)(3) (providing that theft is a Class A misdemeanor if the value of the property stolen is $500 or more but less than $1,500).[1] Count I further alleged that the marijuana had come into Martinez's custody, possession, or control by virtue of his status as a public servant, thereby elevating the offense to a state-jail felony. *See id.* § 31.03(f)(1). Count II alleged that Martinez, with intent to obtain a benefit, intentionally or knowingly misused government property—i.e., the aforementioned marijuana—which had come into his custody or possession by virtue of his employment as a public servant. *See id.* § 39.02(a)(2). Count III alleged that Martinez, with intent to obtain a benefit, intentionally or knowingly violated "a law relating

---

[1] Penal code section 31.03(e)(3) has since been amended to state that theft is a Class A misdemeanor if the value of the property stolen is $750 or more but less than $2,500. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 10 (H.B. 1396). The prior version is applicable in this case. *See id.* §§ 30(a), 31 (stating that the effective date of the amending law is September 1, 2015 and the amendment is applicable only to an offense committed on or after that date).

2

to [his] employment as a public servant, namely, a law relating to the retention or destruction of contraband under Chapter 481 of the Texas Health and Safety Code, by allowing the removal of marijuana from the Sullivan City police department by Angel [De La] Mora." *See id.* § 39.02(a)(1); *see also id.* § 39.02(b) (providing that an offense under section 39.02(a)(1) is a Class A misdemeanor).

In his motion to quash, Martinez argued that Count I should be quashed because (1) the marijuana taken from the police department did not have a value of at least $500 and (2) there is legally and factually insufficient evidence to support a finding beyond a reasonable doubt that he acquired or exercised control over the marijuana. He argued that the marijuana was in fact taken by De La Mora, a Sullivan City Police Department officer, in violation of Martinez's instructions. The motion argued that Counts II and III should be quashed because there is legally and factually insufficient evidence to support a finding beyond a reasonable doubt that Martinez acted with "intent to obtain a benefit." In the alternative, Martinez asked the trial court to compel the State to specify the value of the property misused as alleged in Count II, and to specify which "law relating to [his] employment" was violated as alleged in Count III. *See id.* §§ 39.02(a)(1), (a)(2). Finally, Martinez argued that all three counts should be quashed on grounds of "selective prosecution," arguing that "he was singled out for prosecution based on an unjustifiable standard such as race or other arbitrary classification." Martinez also filed a motion to suppress certain evidence.

At a hearing, Daniel Duran, a Sullivan City Police Department sergeant, testified that he, Martinez, Investigator Reynaldo Cortes, and De La Mora were cleaning an evidence storage room on May 21, 2015, when Duran observed De La Mora place "some

3

green leafy substance into a bottle and he closed the cap on it." When defense counsel asked Duran why he did not stop De La Mora or "do anything" when he took the substance, Duran replied that he had been "dispatched to a call" by Martinez. The following day, De La Mora confessed to Duran that he had taken the marijuana and put it in bottles of alcohol for his father for medicinal purposes, but Duran thought that De La Mora was joking, so he did not report it.

Later, however, Duran became suspicious and so he sought to review surveillance video footage from the evidence storage room taken on May 21. He viewed the surveillance footage on May 25 and determined that the green substance taken by De La Mora from the evidence room was in fact marijuana which had been recovered as evidence from an abandoned house a year earlier. Duran made a video recording of the surveillance footage with his cell phone "[b]ecause [he] feared someone was going to try and delete it." Duran acknowledged that, before he reviewed the surveillance footage in the booking room of the police station, he disconnected a camera in that room so that other officers in the dispatch office would not be able to see what he was doing. He did not record the entire surveillance video with his cell phone, but rather only "[t]he portion that showed a crime being committed." Duran copied his cell phone video onto a DVD and gave it to investigator Bobby Garcia of the Texas Ranger Division of the Department of Public Safety.[2] Later, Garcia obtained a search warrant for the original surveillance footage, but it had been automatically erased by the video surveillance system because too much time had elapsed since the footage was recorded.

---

[2] Duran testified that he gave the video to the Texas Rangers rather than Sullivan City police because "there had been several instances of suspicion of corruption" involving De La Mora in the past.

4

Duran stated that there is no evidence that Martinez took the marijuana, intended to benefit from De La Mora's actions, or violated any evidence handling policy. He denied that Martinez was a "target of [his] investigation" and he refused to opine on the dollar value of the marijuana.

Garcia testified that, according to Duran's cell phone video, Martinez saw De La Mora leave the police department with the bottles containing marijuana. Garcia also agreed, however, that "there is no evidence" that Martinez would benefit from De La Mora's actions. Garcia stated that Duran—like Martinez and Cortes—had a duty to arrest De La Mora when he saw him taking the marijuana; however, Garcia did not file charges against Duran "[b]ecause he was a witness who came forward with information."

Judy Davila, the city manager, stated that she suspended De La Mora for violating city evidence handling procedures, and she suspended Duran for, among other things, tampering with evidence by recording surveillance footage with his cell phone and giving the recording to the Texas Rangers for investigation. She did not believe that Martinez had violated city evidence handling procedures or any policy. Davila agreed with defense counsel that both Duran and Martinez were "similarly situated" and yet no charges were brought against Duran because Duran had filed suit against the city for damages resulting from his suspension, whereas Martinez had not filed suit.

After hearing argument from counsel, the trial court orally granted Martinez's motion to quash and his motion to suppress Duran's cell phone video recording of the police station surveillance footage. A written order was entered granting the motion to quash only, and this appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(1) (West, Westlaw through 2017 1st C.S.) (providing that the State is entitled to appeal an

5

order dismissing an indictment).

## II. DISCUSSION

### A. Motion to Quash

By its first issue on appeal, the State contends that the trial court erred in quashing all three counts of the indictment because the arguments underpinning the motion to quash related to "factual determinations" rather than the "legal standards required of an indictment."

We agree. "Texas has no pretrial procedure enabling a criminal defendant to challenge, or a trial court to determine, the sufficiency of the evidence on an element of the charged offense." *State v. Rogers*, 138 S.W.3d 524, 526 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007) (noting that a motion to quash, "like any pre-trial motion, cannot be used to argue that the prosecution could not prove one of the elements of the crime" and that "a pre-trial proceeding should not be a 'mini-trial' on the sufficiency of the evidence to support an element of the offense"). To the contrary, "it is well established that an indictment returned by a legally constituted unbiased grand jury, if valid on its face, is sufficient to mandate trial of the charge on the merits." *Crocker v. State*, 573 S.W.2d 190, 204 (Tex. Crim. App. 1978). Thus, though a defendant may move to quash an indictment based on defects contained on the face of the indictment, the indictment cannot be defeated by evidence presented at a pretrial hearing. *Rogers*, 138 S.W.3d at 526; *see Bourland v. State*, 112 S.W.2d 720, 720 (Tex. Crim. App. 1937) ("An indictment must stand or fall upon the averment found in that document itself. The evidence may not be looked to in aid thereof. If so, many indictments good on their faces would be bad in the light of the evidence, and

6

vice versa; many bad on their faces would be good where the evidence makes out a case if it had been properly pleaded."); *Ritter v. State*, 176 S.W. 727, 730 (Tex. Crim. App. 1915) ("The pleading must be tested, when it is claimed it is insufficient, by the pleading itself. And whatever testimony was introduced on the trial cannot be referred to as either supporting the allegations or to show their insufficiency, so far as the validity of the indictment itself is concerned."). Accordingly, a trial court cannot quash an indictment on grounds that the State's evidence is insufficient to show an element of the charged offense. *See Lawrence*, 240 S.W.3d at 916.

As to Count I, the theft charge, Martinez responds on appeal that the trial court did not err in granting his motion to quash because the indictment failed to give him adequate notice of the charge against him. *See* TEX. CODE CRIM. PROC. ANN. art. 21.11 (West, Westlaw through 2017 1st C.S.) ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged . . . ."); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (holding that, to satisfy the accused's right to notice under the United States and Texas Constitutions, "the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense"). Specifically, Martinez argues in his responsive brief on appeal that Count I did not "allege which type of appropriation occurred." *See* TEX. PENAL CODE ANN. § 31.01(4) (West, Westlaw through 2017 1st C.S.) (defining "appropriate" as "(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or

7

another; or (B) to acquire or otherwise exercise control over property other than real property"); *Gorman v. State*, 634 S.W.2d 681, 683 (Tex. Crim. App. 1982) (holding that indictment which did not specify type of appropriation under penal code section 31.01 should have been quashed for failure to provide adequate notice).

But Martinez's written motion to quash Count I did not allege lack of notice. "All motions to set aside an indictment or information and all special pleas and exceptions shall be in writing," TEX. CODE CRIM. PROC. ANN. art. 27.10 (West, Westlaw through 2017 1st C.S.), and an oral motion to quash an indictment is inadequate and preserves nothing for review. *Faulks v. State*, 528 S.W.2d 607, 609 (Tex. Crim. App. 1975); *Stoutner v. State*, 36 S.W.3d 716, 719 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see* TEX. R. APP. P. 33.1(a)(1). Because Martinez did not argue lack of notice in his written motion to quash Count I, the trial court could not have permissibly quashed Count I on this basis.

The record shows, in any event, that the trial court did not grant the motion on the basis of lack of notice. As to Count I, Martinez's written motion and argument at the trial court were based only on his assertion that there was "legally and factually insufficient evidence" to support findings that the marijuana was worth more than $500 or that Martinez acquired or exercised control over the marijuana. There was no claim made before the trial court that Count I failed to provide adequate notice to Martinez of the charges against him. And though the trial court did not specify the grounds for its ruling in its written order, it made clear at the hearing that its ruling was based on the lack of evidence that the marijuana was worth more than $500. In particular, the trial court, prosecutor, and defense counsel discussed whether the value of the marijuana could be "reasonably ascertained"—if not, then it would be deemed to have a value of $500 or

8

more but less than $1,500. *See* TEX. PENAL CODE ANN. § 31.08(c) (West, Westlaw through 2017 1st C.S.).[3] The prosecutor argued that the value of the marijuana could not be reasonably ascertained; defense counsel argued that it could but that there was no evidence the value was $500 or more.[4] The trial court agreed with defense counsel, but as noted, the court lacked the authority to quash Count I on the basis of lack of evidence. *See Rosenbaum*, 910 S.W.2d at 948; *Rogers*, 138 S.W.3d at 526. For the same reason, the trial court lacked authority to quash Counts II and III on the basis, as alleged in Martinez's written motion to quash, that there is legally and factually insufficient evidence that Martinez acted with "intent to obtain a benefit."

Finally, Martinez asserted in his motion to quash that all three counts should be quashed because "he was singled out for prosecution based on an unjustifiable standard such as race or other arbitrary classification." Pursuant to the Equal Protection Clause of the Fourteenth Amendment, "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985). But "[i]t is not sufficient to show only that the law is enforced against some and not others"; instead, "[t]here must be a showing of actual and purposeful discrimination against the individual himself or against a suspect classification in which he falls (such as wealth, religion, or race), with no proper justifying

---

[3] For theft offenses, the penal code defines the "value" of non-documentary property as "(1) the fair market value of the property . . . at the time and place of the offense, or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." TEX. PENAL CODE ANN. § 31.08(a) (West, Westlaw through 2017 1st C.S.). But if property has value that cannot be "reasonably ascertained" by those criteria, the property is deemed to have a value of $500 or more but less than $1,500. *Id.* Like section 31.03, this statute has since been amended to increase the deemed value to $750 or more but less than $2,500, but the prior version applies in this case. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, §§ 12, 30(a), 31 (H.B. 1396).

[4] Defense counsel repeatedly emphasized that the marijuana at issue was "rat infested," but no witness testified to this at the hearing.

governmental purpose in such classification." *Armendariz v. State*, 529 S.W.2d 525, 527 (Tex. Crim. App. 1975).

There was no explicit discussion of this ground at the trial court hearing and Martinez does not address it in his responsive brief on appeal. In any event, although the city manager speculated that Martinez was charged while Duran was not because Duran filed suit against the city and Martinez did not, there was no evidence at the hearing supporting a finding of "actual and purposeful discrimination" based on any suspect classification. *See id.* Thus, the trial court erred if it granted the motion to quash on this basis.

Because none of the grounds raised in Martinez's written motion to quash are meritorious, the trial court erred in granting the motion, and we sustain the State's first issue. Nevertheless, as noted, Martinez's motion also argued in the alternative that the State should be ordered to "more specifically plead" Counts II and III to specify the alleged value of the marijuana and the "law relating to [his] office or employment" which he allegedly violated, respectively. We find that the trial court should have granted this alternative relief.

As to Count II, penal code section 39.02(a)(2) states that

> [a] public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

TEX. PENAL CODE ANN. § 39.02(a)(2). An offense under this subsection can range from a Class C misdemeanor all the way to a first-degree felony depending on the "value of the thing misused." *See id.* § 39.02(c)(1)–(7). Yet Count II of the indictment does not specify

10

the alleged value of the thing misused—i.e., the marijuana. "It is well established that the value of the property must be alleged if it affects penalty." *Wilson v. State*, 520 S.W.2d 377, 379 (Tex. Crim. App. 1975); *see Peoples v. State*, 566 S.W.2d 640, 641 (Tex. Crim. App. 1978) ("An indictment or information should allege every fact which may affect the degree or kind of punishment."). Accordingly, on remand, the State must be ordered to amend Count II to specify the alleged value of the misused government property such that the level of the charged offense may be determined.

As to Count III, penal code section 39.02(a)(1) states that "[a] public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . violates a law relating to the public servant's office or employment." TEX. PENAL CODE ANN. § 39.02(a)(1). "Law relating to a public servant's office or employment" is defined as "a law that specifically applies to a person acting in the capacity of a public servant and that directly or indirectly: (A) imposes a duty on the public servant; or (B) governs the conduct of the public servant." *Id.* § 39.01(1) (West, Westlaw through 2017 1st C.S.). Count III tracks section 39.02(a)(1) and additionally states that the "law" Martinez allegedly violated was "a law relating to the retention or destruction of contraband under Chapter 481 of the Texas Health and Safety Code."

The Texas Court of Criminal Appeals has held that, though an indictment tracking the language of a statute will ordinarily provide adequate notice of the offense charged, more particularity is required if the statutory language is "not completely descriptive." *State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008). Statutory language is not completely descriptive "when the statutes define a term in such a way as to create

11

several means of committing an offense, and the definition specifically concerns an act or omission on the part of the defendant." *Id.* (citing *Solis v. State*, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990); *Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989)). For example, although penal code section 30.02(a)(3) states that a person commits burglary if he or she "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault," it is nevertheless insufficient for an indictment to merely allege that the defendant committed or attempted to commit "a felony"; instead, the indictment must name the specific felony offense that was committed or attempted. *Davila v. State*, 547 S.W.2d 606, 609 (Tex. Crim. App. 1977).

We conclude that, like burglary under section 30.02(a)(3), the language of section 39.02(a)(1) is "not completely descriptive" of the offense. The definition of a "law relating to the public servant's office or employment" creates several means of committing the offense, and this definition "specifically concerns an act or omission on the part of the defendant." *See Barbernell*, 257 S.W.3d at 251*.* That is, the statute requires a showing that the defendant specifically, and not some other person, violated some law relating to the defendant's office or employment. And though "law relating to a public servant's office or employment" is defined by statute, it is defined very broadly and allows for a vast array of potential means of committing the offense. *See* TEX. PENAL CODE ANN. § 39.01(1). Therefore, an indictment alleging an offense under section 39.02(a)(1) must specify which law or laws relating to the public servant's office or employment were allegedly violated. The trial court must order the State to amend Count III accordingly on remand.

12

**B.     Motion to Suppress**

The State contends by its second issue that the trial court erred by granting the motion to suppress because Martinez failed to show that any evidence was misplaced or destroyed in bad faith.   *See* TEX. R. EVID. 1004(a) (providing that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith"); *see also* TEX. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise.").

We first must determine whether we have jurisdiction over this part of the appeal. *See State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Crim. App. 1996) (holding that a court may *sua sponte* address the issue of subject matter jurisdiction because it cannot be conferred by agreement of the parties but must instead be vested in a court by constitution or statute), *overruled on other grounds by State v. Medrano*, 67 S.W.3d 892 (Tex. Crim. App. 2002); *Garcia v. State*, 45 S.W.3d 733, 735 (Tex. App.—Corpus Christi 2001, no pet.).

Article 44.01 of the Texas Code of Criminal Procedure authorizes the State to appeal an order granting a motion to suppress in a criminal case.  TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2017 1st C.S.).  The appeal must be filed within fifteen days after the date on which the order is "entered by the court."  *Id.* art. 44.01(d); *see* TEX. R. APP. P. 26.2(b).  In *State v. Rosenbaum*, 818 S.W.2d 398 (Tex. Crim. App. 1991), the court of criminal appeals addressed the meaning of the phrase "entered by the court" contained in article 44.01(d).  Reading article 44.01 as a whole, the

13

court in *Rosenbaum* interpreted the phrase "entered by the court" as meaning the signing of an order by the trial judge, reasoning that the signing of a written order memorializes the trial court's intent to authenticate the action taken. *Id.* at 402. Thus, the court concluded the time for filing the State's notice of appeal under article 44.01 runs from the date the trial judge signs a written order. *Id.* at 402–03; *accord Rodarte v. State*, 860 S.W.2d 108, 110 (Tex. Crim. App. 1993); *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex. Crim. App. 1992) (orig. proceeding). Therefore, under *Rosenbaum* and its progeny, a State's appeal under article 44.01 must be from a signed, written order. *State v. Sanavongxay*, 407 S.W.3d 252, 258–59 (Tex. Crim. App. 2012); *State v. Cox*, 235 S.W.3d 283, 284 (Tex. App.—Fort Worth 2007, no pet.).[5]

As noted, though the trial court orally granted Martinez's motion to suppress at the hearing, no written ruling thereon appears in the record.[6] Therefore, the State lacked statutory authority to appeal that ruling, and we lack jurisdiction over that part of the State's appeal. We overrule the State's second issue.

### III. CONCLUSION

We dismiss for want of jurisdiction that portion of the State's appeal seeking to challenge the trial court's granting of Martinez's motion to suppress. We reverse the trial

---

[5] In *State v. Sanavongxay*, the court of criminal appeals held that the State may not appeal an oral ruling under article 44.01 even if the trial court refuses to issue a written ruling. 407 S.W.3d 252, 258 n.9 (Tex. Crim. App. 2012). The Court reasoned that "in such a situation, our current procedures allow a litigant [an] adequate remedy through a petition for a writ of mandamus." *Id.* In any event, there is no indication in the record here that the State asked the trial court to sign a written ruling granting the motion to suppress or that the trial court refused to do so.

[6] Although the docket sheet contained in the clerk's record indicates that the trial court granted Martinez's motion to suppress, a docket sheet entry is not an order. *See State v. Garza*, 931 S.W.2d 560, 561–62 (Tex. Crim. App. 1996); *State v. Cox*, 235 S.W.3d 283, 285 (Tex. App.—Fort Worth 2007, no pet.) (holding that "a docket sheet entry does not constitute a written order for the purpose of appealing the granting of a motion to suppress under article 44.01").

14

court's judgment granting Martinez's motion to quash all three counts of the indictment. The cause is remanded with instructions to compel the State to amend Counts II and III of the indictment as set forth herein, and for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of April, 2018.